98 So.2d 69

Arthur TURNER

v.

STATE.

2 Div. 933.

Court of Appeals of Alabama.

Nov. 5, 1957.

Rehearing Denied Nov. 7, 1957.

J. C. Locke, Marion, for appellant.

John Patterson, Atty. Gen., and Wm. C. Younger, Asst. Atty. Gen., for State.

CATES, Judge.

Turner has appealed from his conviction of an assault against S. W. Mooty (a deputy sheriff of Perry County).

On August 21, 1956, Mr. Mooty went to the Marion Poultry Company, Marion, Alabama, to serve a warrant on Turner for a traffic offense. He found Turner washing out some vats and asked him, "Big Boy, do you want to sign that bond this morning? I come down to serve

the warrant. Do you want to sign that bond this morning?"

Mooty's testimony continued:

"He said, 'I don't know.' I said, If you do, come out to the car and sign it.' I turned around. He said to me, 'What the hell do you mean? You are too damned hard.' I said, 'You don't have to sign that bond; but you have to sign the bond or go to jail.' That instant he hit me and knocked me against a brick wall, blacked this eye, knocked these glasses all out of shape. And he grabbed me from behind and pinned me down where I was helpless. I looked around over my shoulder, and said, 'You got me now, what are you going to do?' At that time Mr. Phillips went by. Mr. McFarland came up and patted him on the shoulder and said, 'That's all right. Turn him loose; turn him loose.' And after a minute of coaxing, he turned me loose.

"Mr. Locke: I move to exclude that, 'after a minute of coaxing.'

"The Court: I exclude that.

"Q. Did he turn you aloose? A. Yes, sir, he turned me aloose.

"Q. Was that in Perry County, Alabama? A. Yes, sir.

"Mr. McLeod: Your witness."

Mr. Frank Phillips, called by the State, testified:

"Q. Tell the jury in your own words what you saw happen there at that time. A. Mr. Mooty called Big Boy to the front; and after that I was busy; I didn't see anything; and shortly afterwards I heard a commotion; and Big Boy had Mr. Mooty's arms pinned to his side."

The testimony of Mr. McFarland was to the same effect.

Turner's version was:

"A. Well, he walked in the door and said, 'Big Boy, come here.' I walked to him. He asked, told me, I got anybody to sign this damn bond? I said, 'What for, Sunday?' He say, 'You God damned right. You thought I was joking didn't you?' I kind of laughed, and said, 'No, sir.' I said, 'Most anybody would sign a speeding bond.' And he said, 'What you laughing for?' He said, 'You are smart. Anything I say, you laugh.' I said, 'No, sir.' He said, 'You trying to be smart.' I said, 'There is no use to snull up about it.' And he hauled off and hit me and blinded me. It looked like he was fixing to go in his pocket to get something. I couldn't get out. I just hugged him and was holding to him. I said, 'What you hit me for?' I said, 'I would have gone with you.' He said, 'Oh, God damn you, you done played hell now. You done put your hand on Mr. Mooty.' I said, 'I ain't done nothing. I would have gone with you.'"

Turner's counsel introduced in evidence the assault and battery warrant which Mooty swore out on August 22 in contradiction of the latter's testimony that the incident occurred on the day before. The trial judge properly denied a tender of the bond given on Turner's enlargement. It had no probative value on the issue of assault and battery.

██ During argument, objection was made to the statement of the county solicitor, "I submit nô man has a right to resist lawful arrest." Even though Turner was not being tried for resisting lawful arrest, we can perceive no error to the prejudice of the defendant since an inference of his so doing was almost inescapable under the State's case. The assault and the resistance were Siamese twins and we doubt that Solomon would have severed them. The res gestae or inseparability principle upholds the reception of the State's testimony as proper evidence. Thus, in Parsons v. State, 251 Ala. 467, 38 So.2d 209, evidence of burglary and

larceny was not error on an indictment of robbery to get the keys to burglarize and steal. See also, Mason v. State, 259 Ala. 438, 66 So.2d 557, 42 A.L.R.2d 847. We agree with the trial judge that the county solicitor's remark was within the permissible latitude afforded counsel in argument thus "the deceased did not have an opportunity to have a trial," was not prejudicial argument. Bryson v. State, 264 Ala. 111, 84 So.2d 785.

■ At two other points objection was made to the circuit solicitor's statements in argument, *first:*

"Mr. McLeod: I am not going to come up here with a misrepresentation.

"Mr. Locke: Wait a minute. I object.

"Mr. McLeod: I have proof you did misrepresent.

"Mr. Locke: I object to that statement on the part of the Solicitor. I take that as an insult and I demand an apology. I am going to move at this time that the Court take the case from the jury and declare a mistrial, on the ground the prosecuting attorney argued the defendant's attorney misrepresented facts.

"Mr. McLeod: I can prove it.

"The Court: That is for the jury to say. I overrule."

*Second:*

"Mr. McLeod: Big Boy Turner considered he was bigger than any deputy sheriff. He thought no deputy sheriff could come down and arrest him; and he knocked hell out of him.

"Mr. Locke: We object to whether he considered he was bigger than any officer.

"The Court: I overrule the objection."

As to the first episode, it seems much milder than that set forth in Vinet v. State, 38 Ala.App. 299, 83 So.2d 357; and the Bryson case, supra, and its authorities obviate any criticism of the second incident.

■ The following two charges were refused the defendant:

"2. The Court charges the Jury if you find from the evidence in this case that the defendant has satisfactorily explained his actions on the day in question you should find the defendant not guilty. Refused.

"3. If you are satisfied from the evidence in this case that the defendant's action was merely an effort to protect himself from an unauthorized attack then being made on him by S. W. Mooty, you should acquit the defendant. Refused."

Without going into all aspects of Charge 2, it suffices to say its thought was better stated in the oral charge in outlining the elements of a verdict of not guilty. The oral charge (which fully covered the applicable principles of self defense) also disposed of any need of Charge 3.

We have reviewed the entire record, as is our duty, and find it free of error. However, the judgment entry shows that on failure of payment of the fine of $100 Turner was sentenced to "perform hard labor for the State of Alabama, for the use of Perry County," and in like verbiage, to perform an added four months hard labor imposed by the judge by virtue of Code 1940, T. 15, § 328.

In view of the recent enactments [1] having the effect of doing away with the leasing out of county convicts at hard labor

1. See Acts No. 60 and No. 61, approved June 21, 1957, amending Code 1940, T. 45, § 72, and T. 15, § 325; also opinion of Attorney General of October 8, 1957, to Hon. W. H. Quillin, Judge, Franklin County Law and Equity Court, which should be read in connection with Acts No. 542 and No. 558, approved Septem-

to the State Board of Corrections for their penal servitude, we consider it necessary to remand this cause for a sentence to hard labor for the county. This prisoner will then not merely be confined in jail but will be put to work as contemplated by law, e. g., Code 1940, T. 45, Ch. 2, Art. 4; T. 45, § 100 as amended.

This cause is due to be affirmed on the merits but is remanded for proper sentence.

Remanded.

### On Rehearing.

Ex mero motu we have restored the cause to reconsider the grounds for remandment for proper sentencing.

■ We now consider that there was no error in the form of sentence to hard labor for "the State of Alabama for the use of Perry County." That expression merely reflected that the governing body of Perry County delivered its hard labor convicts to the State.

Act No. 61, approved June 21, 1957, (1) added to Code 1940, T. 15, § 325, the proviso, "provided, however, no misdemeanor prisoner may be sentenced to the penitentiary," which was already considered to be the law without the benefit of further enactment, and (2) repealed §§ 96, 97, and 99 of T. 45, whereunder county prisoners at hard labor could be delivered to the State.

The delivery to the State having been done away with, the above form of sentence in its execution is to be construed in the light of the new Act. The expression, "the State of Alabama for the use of," having been harmless surplusage initially, is now functus officio insofar as it connoted that Perry County hard labor prisoners were to be delivered to the State.

Therefore, the judgment below is due in all things to be affirmed; opinion modified accordingly.

Application for rehearing overruled.

ber 18, 1957, the former amending Code 1940, T. 45, § 69, and the latter modify-

ing the internal administration of Act No. 60, above.